## No. 24038

### Douglas L. Hervey v. The People of the State of Colorado
(495 P.2d 204)

Decided March 27, 1972.

Morgan Smith, Edward B. Towey, Kenneth J. Russell, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, E. Ronald Beeks, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

This writ of error is prosecuted by Douglas L. Hervey, who has been convicted of first-degree murder by a jury. The evidence in this case was circumstantial and fragmentary. Errors which occurred in the trial require reversal and a new trial.

## THE FACTUAL BACKGROUND

The defendant was charged with murder of a gas station attendant which occurred in a service station in Adams County, Colorado, at approximately 5:00 p.m. on June 17, 1968. The prosecution's evidence established that the victim had been hit in the head with a blunt instrument, had a Pepsi-Cola bottle broken over his head, and had been shot. The gunshot wound, according to the testimony, caused the death of the victim. Glass fragments from the Pepsi-Cola bottle were found in the victim's hair and around his body. The neck of a broken Pepsi-Cola bottle, which was discovered lying next to the victim, was found to have a palm print on it. The palm print did not match the defendant's palm print and was never identified. The defendant took the stand and denied being in the filling station on the day the murder occurred.

The prosecution's case against the defendant hinged on a fingerprint of the defendant which was discovered on a wet Seven-Up bottle. The Seven-Up bottle was found under some tires in the gas station, a short distance from where the victim was found. Expert witnesses were of the opinion that the print on the bottle was not more than twenty-four hours old, but admitted that their opinion was dependent upon the kind or type of liquid that the bottle was in at the time it was found. Testimony also established that the investigators made

no effort to determine what type of liquid surrounded the defendant's fingerprint.

Evidence was also introduced which showed that the victim was found lying in a pool of "O" blood. When the defendant was apprehended in Wyoming, on a wholly different charge, police officers noted that his clothing was spotted with blood. Laboratory examination of the blood on the defendant's clothing disclosed that the spots were all type "O" blood.

The prosecution further established that when the defendant was interrogated in Wyoming, he stated that he left Denver after supper on June 17, 1968. Six days later, after suspicion was focused on the defendant, he was returned to Colorado. He then told law enforcement officers that he left Colorado at 2:15 p.m. on the day in question. Prior to the time the defendant changed his story, he was not told the time that the victim met his death. At trial, no witnesses tied the defendant to the scene of the crime. It is also clear that ballistics tests were run on several guns possessed by the defendant, and none of the guns were identified as the lethal weapon. In addition, there was no evidence of robbery, burglary, or theft, and the case was not tried under the felony-murder doctrine.

## I.

## SUFFICIENCY OF EVIDENCE

The defendant asserts that the trial court erred in overruling his motions for judgment of acquittal, because the evidence against him was insufficient to sustain a conviction. Fingerprints warrant a conviction when the fingerprints clearly and unequivocally establish that an accused committed the crime. To satisfy the requirements of proof in a circumstantial case, the fingerprints which correspond to those of the accused must be found in the place where the crime was committed under such circumstances as to rule out the possibility that they could have been impressed at a time other than the time when the crime was committed. *Silva v. People,* 170 Colo. 152, 459 P.2d 285 (1969); *accord, State v. Tew,* 234 N.C. 612, 68 S.E.2d 291 (1951). *See also,* 28

A.L.R.2d 1149-1157. The determination of whether the circumstances satisfy the general rule is a factual matter to be decided by the jury. *Silva v. People, supra.* In this case, the jury returned a verdict of guilty and was obviously convinced that the fingerprints were impressed at the time the alleged crime was committed. Under these circumstances, the defendant's motion for a judgment of acquittal was properly denied. *McClendon v. People,* 174 Colo. 7, 481 P.2d 715 (1971); *Maes v. People,* 169 Colo. 200, 454 P.2d 792 (1969); *Mathis v. People,* 167 Colo. 504, 448 P.2d 633 (1968).

The defendant's motion for judgment of acquittal solely on the charge of first-degree murder, however, should have been granted. Under the Colorado Statutes, murder in the first degree, other than in the commission of a felony, is the *deliberate* and *premeditated* killing of a human being with *express malice* aforethought. *Hinton v. People,* 169 Colo. 545, 458 P.2d 611 (1969); *accord, Watkins v. People,* 158 Colo. 485, 408 P.2d 425 (1965); *Washington v. People,* 158 Colo. 115, 405 P.2d 735 (1965); *Ingles v. People,* 92 Colo. 518, 22 P.2d 1109 (1933). These cases further hold that the elements of deliberation, premeditation and express malice must be manifested by external circumstances capable of proof. The circumstantial evidence in this case only proved that the victim had lacerations and bruises on his head and had been shot. Standing alone, these circumstances were insufficient to justify submitting the charge of first-degree murder to the jury. The use of a deadly weapon is sufficient to allow the jury to infer the implied malice necessary to support a finding of second-degree murder. *Smith v. People,* 142 Colo. 523, 351 P.2d 457 (1960). However, the use of a deadly weapon, of itself, is not a sufficient basis for the legal presumption that the killing was deliberate, premeditated, and done with express malice aforethought. *Power v. People,* 17 Colo. 178, 28 P. 1121 (1892); *Hill v. People,* 1 Colo. 436 (1872). *See generally,* 40 Am.Jur.2d § 266, and the cases cited in 96 A.L.R.2d 1435.

## II.
## DISCOVERY

■ In the trial of this case, the court viewed Colo. R. Crim. P. 16 as providing the maximum scope of discovery in a criminal case. Based on this rule, the trial court denied the defense access to the names of those whose prints had been compared with the palm print on the broken Pepsi-Cola bottle and the unidentified fingerprints which were found on the cash register. The defense was also denied photographs which had been taken of the crime scene. In addition, defense counsel was not permitted to see the statements which the defendant had given prior to the time he testified at trial. *See Cicenia v. LaGuy,* 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958). *State v. Johnson,* 28 N.J. 133, 145 A.2d 313 (1958). On retrial, discovery of all these materials should be made available in accordance with *People ex rel. Shinn v. District Court,* 172 Colo. 23, 469 P.2d 732 (1970); *Cheatwood v. People,* 164 Colo. 334, 435 P.2d 402 (1968); *Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *See also, American Bar Association Standards Relating to The Prosecution Function,* § 3.11.

III.
## PRELIMINARY HEARING

■ The defendant has also urged this Court to reverse on the ground that the defendant was not afforded a preliminary hearing. We have stated on numerous occasions that there is no constitutional right to a preliminary hearing, and the failure to grant a preliminary hearing does not vitiate a conviction. *Sergent v. People,* 177 Colo. 354, 497 P.2d 983; *Falgout v. People,* 170 Colo. 32, 459 P.2d 572 (1969). Our view is also shared by the United States Supreme Court. *Adams v. Illinois,* 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972); *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). It is likewise clear, under the rules that were then in effect, that the defendant had no state-derived right to a preliminary hearing prior to the filing of the direct information charging him with first degree murder. Colo. R. Crim. P. 7(b)(3)(i); *DeBaca v. Trujillo,* 167 Colo. 311, 447 P.2d 533 (1968).

## IV.
## INCULPATORY STATEMENTS

From the record, it is also clear that the trial court erred in admitting into evidence the inculpatory statements of the defendant. At the time Officer Mathews was called to testify as to the defendant's statements following his arrest in Wyoming, defense counsel requested that a *Jackson-Denno* hearing be conducted to determine whether the defendant's statements were made voluntarily. The court's denial of the request was error, and a hearing on the issue of voluntariness must be conducted on retrial. *Goddard v. People,* 172 Colo. 498, 474 P.2d 210 (1970); *Whitman v. People,* 170 Colo. 189, 460 P.2d 767 (1969); *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

Moreover, the statements made by the defendant to officers of the Adams County Sheriff's Office, under the circumstances of this case, must be suppressed because of a failure to comply with the mandate of Colo. R. Crim. P. 5(a)(2). The record reveals that there was a delay of six days between the time the defendant was first questioned regarding the death of the service station attendant and the time he was finally brought before a judge and advised of his rights. Under our holding in *Aragon v. People,* 166 Colo. 172, 442 P.2d 397 (1968), and under the circumstances here, any statements made prior to compliance with the rule are inadmissible.

## V.
## OTHER CRIMES

Throughout the trial of this case, the prosecutor tried to establish a motive for the murder of the victim. By innuendo and conjecture, the prosecutor argued that the victim was murdered as the result of an attempted robbery by the poverty-stricken defendant. The prosecutor's theory of robbery was wholly speculative and unsupported by the evidence. Without any evidence to support a theory of robbery, it was unprofessional conduct on the part of the prosecutor to ask questions and to make statements which implied the existence of a factual predicate which he knew he

could not support with evidence. *American Bar Association Standards of Criminal Justice Relating to The Prosecution Function,* § § 5.6(b), 5.7(d), 5.8(a), (d).

Since the defendant's motion for judgment of acquittal on the charge of first-degree murder should have been granted, a new trial on the charge of first-degree murder would be contrary to the Fifth Amendment guarantee against double jeopardy. U.S. Const. amend. V (Fifth Amendment); Colo. Const. art. II, § 18; *Sapir v. United States,* 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426 (1955). Accordingly, we reverse and remand with directions that the defendant be granted a new trial on the charge of second-degree murder and lesser included offenses.

Judgment reversed and cause remanded for a new trial.