920 P.2d 993 (1996)
Michael Joseph GEIGER, Appellant,
v.
The STATE of Nevada, Respondent.
No. 24163.
Supreme Court of Nevada.
July 22, 1996.
*994 Michael R. Specchio, Public Defender and Jane McKenna, Deputy Public Defender, Washoe County, for Appellant.
Frankie Sue Del Papa, Attorney General, Carson City; Richard A. Gammick, District Attorney and Gary H. Hatlestad, Deputy District Attorney, Washoe County, for Respondent.

OPINION
STEFFEN, Chief Justice:
On the evening of September 15, 1991, Valerie Ellis and her family returned to their home in Reno, Nevada. Before Ellis retired to bed, she closed the windows and doors in her house. In the morning, Ellis discovered an open window in the family room. Her purse and her husband's wallet were located on the ground beneath the window. Although the amount of money taken was unclear, between one hundred and fifty and three hundred dollars were missing from the purse and wallet. The previous night, Ellis placed these items on the kitchen counter.
Ellis also discovered that her locked file box had been removed from the house and was located on the ground. The lid had been pried off but nothing was missing from the file box. The police discovered a screen leaning against the house that had been pried off the family room window. After examining the area, the police determined that someone had broken into Ellis' house.
The police obtained a partial thumbprint from the screen and three fingerprints from the file box. An experienced latent-finger-print examiner determined that the fingerprint obtained from the screen belonged to Michael Joseph Geiger. The state charged Geiger with one count of burglary. The information also charged Geiger with being a habitual criminal and listed Geiger's eight prior convictions.
At the jury trial, the district court clerk read a portion of the charge from the information in the presence of the jury as follows:
Michael Joseph Geiger, the defendant above named, has committed the crime of: Count I. BURGLARY, a violation of NRS 205.060, a felony, in the manner following: That the said defendant on or between the 15th day of September A.D. 1991, and the 16th day of September A.D. 1991, or thereabout, and before the filing of this Information, at and within the County of Washoe, State of Nevada, did willfully and unlawfully enter a certain house located at 1675 Majestic, Reno, Washoe County, Nevada, and being the house of VALERIE ELLIS with the intent then and there to commit larceny therein, after having been previously convicted of Burglary in 1989.[1]
The district court then held a bench conference. After the state presented its opening statement, the district court judge gave the following admonition to the jury:
I want to correct a possible apprehension that you might have received when my clerk read the Information to you.
As she indicated to you, this thing is called an Amended Second Information. In other words, it's very recently been changed. And there was a mistake made by the typist, [who] inserted some language that didn't belong there.
She read something about "after having been previously convicted" of something. There is no previous conviction. He is not charged with any prior offenses of any kind. The State is not obligated to prove that. It is a matter which is not before you.
And all of you agreed as we went through the process of selecting you, that you would follow my instructions, and I ask you and I order you and I expect from you to follow my instructions now to disregard any of that mistakenly-written language.
The district court judge then read to the jury the information without the language "after *995 having been previously convicted of Burglary in 1989." The district court acknowledged Geiger's objection for the record and subsequently denied Geiger's motion for a mistrial. The district court concluded that its admonition was sufficient to eliminate any prejudice to Geiger, provided that no further mention was made of Geiger's prior conviction.
At trial, the evidence presented by the state linking Geiger to the crime was Geiger's fingerprint found on the pried-off window frame and the testimony of Ellis that she did not know or recognize Geiger and that Geiger had never been to her home for any purpose. The jury returned a verdict of guilty on the charge of burglary. The district court adjudicated Geiger to be a habitual criminal and sentenced him to serve fourteen years in the Nevada State Prison. This appeal followed.
Geiger first contends that the evidence presented at trial was insufficient to support the jury's finding of guilt on the burglary charge.[2] Geiger's contention lacks merit. We have held that "[w]hen fingerprints of the defendant are found where the crime was committed, and circumstances rule out the possibility that they might have been imprinted at a different time than when the crime occurred, a conviction is warranted." Carr v. State, 96 Nev. 936, 939, 620 P.2d 869, 871 (1980) (citing Hervey v. People, 178 Colo. 38, 495 P.2d 204 (1972)). Corroborating evidence is not required. Id.
Geiger's fingerprint was located at the point of entry. The police lifted Geiger's fingerprint from a window screen pried off of a window which had been opened. Further, Ellis testified that she did not know or recognize Geiger and that he had never been to her home for any purpose. We conclude that this was sufficient evidence to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. See Wilkins v. State, 96 Nev. 367, 609 P.2d 309 (1980). Accordingly, we affirm the judgment of conviction.
Geiger next contends that the district court clerk's statement to the jury alluding to Geiger's prior conviction was contrary to the mandate of NRS 207.010(5)[3]. Further, Geiger contends that the district court's limiting instruction was insufficient to eliminate the prejudice to Geiger and the district court erred in denying Geiger's motion for a mistrial. In response, the state contends that the district court did not err in denying Geiger's motion for a mistrial. Further, even if the district court erred, the state contends that the reference to Geiger's prior conviction was harmless.
The district court clerk's statement in the presence of the jury regarding Geiger's prior conviction was contrary to the mandate of NRS 207.010(5). However, it is within the sound discretion of the trial court to determine whether a mistrial is warranted. Owens v. State, 96 Nev. 880, 620 P.2d 1236 (1980); Sparks v. State, 96 Nev. 26, 604 P.2d 802 (1980). Absent a clear showing of abuse of discretion, the trial court's determination will not be disturbed on appeal. Id. Accordingly, Geiger must demonstrate that the district court abused its discretion in denying Geiger's motion for a mistrial. In doing so, Geiger must prove that the inadvertent reference to his prior conviction "was so prejudicial as to be unsusceptible to neutralizing by an admonition to the jury." Allen v. State, 99 Nev. 485, 490, 665 P.2d 238, 241 (1983).
To determine whether an inadvertent reference to a prior criminal activity is so prejudicial that it cannot be cured by an admonition to the jury, the following four factors may be considered: (1) whether the remark was solicited by the prosecution; (2) *996 whether the district court immediately admonished the jury; (3) whether the statement was clearly and enduringly prejudicial; and (4) whether the evidence of guilt was convincing. Allen v. State, 99 Nev. 485, 490-91, 665 P.2d 238, 241-42 (1983).
In applying the factors in Allen, we conclude that the inadvertent reference to Geiger's prior conviction was not so prejudicial that it could not be neutralized by the admonition to the jury. First, the reference to Geiger's prior conviction was inadvertently made by the district court clerk, and therefore, was not solicited by the prosecution. Second, the district court admonished the jury almost immediately after the reference was made and prior to the presentation of evidence. The admonition was very thorough because the district court not only instructed the jury to disregard the language regarding the prior conviction, but also stated that the language was a mistake and that there was no prior conviction. Third, the reference was not clearly and enduringly prejudicial. The reference constituted only one brief reference during the two-day trial and it was followed by a thorough admonition to the jury. Finally, the evidence of guilt was convincing. As we have concluded, there was sufficient evidence to support the conviction. Accordingly, we conclude that the district court did not abuse its discretion in denying Geiger's motion for a mistrial.[4] The judgment of conviction is affirmed.
YOUNG and SPRINGER, JJ., concur.
SHEARING, J., dissents in part.
ROSE, J., dissents.
SHEARING, Justice, dissenting in part and concurring in part:
I agree with the dissent that the conviction should be reversed on the basis of the State's reference to Geiger's prior conviction; however, I agree with the majority that there was sufficient evidence to sustain the conviction.
ROSE, Justice, dissenting:
For the reasons discussed below, I would reverse the judgment of conviction based on insufficiency of the evidence to support the jury verdict, and I would reverse the district court's denial of Geiger's motion for a mistrial.
First, I disagree with the majority's reaffirmation of the standard for fingerprint-only cases set forth in Carr v. State, 96 Nev. 936, 620 P.2d 869 (1980). In that case, this court held that "[w]hen fingerprints of the defendant are found where the crime was committed, and circumstances rule out the possibility that they might have been imprinted at a different time than when the crime occurred, a conviction is warranted." Carr v. State, 96 Nev. 936, 939, 620 P.2d 869, 871 (1980) (citing Hervey v. People, 178 Colo. 38, 495 P.2d 204 (1972)). The language in Carr is troublesome because it does not clearly identify who has the burden of proving "circumstances" that would rule out the possibility of the fingerprint having been imprinted at some earlier time. Worse, Carr appears to improperly shift to the defendant the burden of proving that his or her fingerprints could have been imprinted at some other time than when the crime occurred; the reason being that the state is unlikely to present evidence of circumstances where the defendant, on some other occasion than the time of the crime, could have possibly imprinted his or her fingerprints on objects found at the crime scene. It is the defendant who is more likely to present such evidence. Further, notwithstanding where the burden of proof lies, the standard set forth in Carr is vague and does not clearly identify what type of circumstances rule out the possibility that the fingerprints may have been imprinted at a different time and how such circumstances can be demonstrated.
I believe that a review of the legal standard set forth by the Ninth Circuit Court of Appeals for fingerprint-only cases is illuminating. I find the Ninth Circuit standard and the reasoning supporting it persuasive. *997 In Mikes v. Borg, 947 F.2d 353 (9th Cir. 1991), cert. denied, 505 U.S. 1229, 112 S.Ct. 3055, 120 L.Ed.2d 921 (1992), the court articulated the standard as follows:
We have held that fingerprint evidence alone may under certain circumstances support a conviction. However, in fingerprint-only cases in which the prosecution's theory is based on the premise that the defendant handled certain objects while committing the crime in question, the record must contain sufficient evidence from which the trier of fact could reasonably infer that the fingerprints were in fact impressed at that time and not at some earlier date. In order to meet this standard the prosecution must present evidence sufficient to permit the jury to conclude that the objects on which the fingerprints appear were inaccessible to the defendant prior to the time of the commission of the crime.
Id. at 356-57 (citations omitted). This standard clearly places the burden of proof on the prosecution to show that the object was inaccessible to the defendant prior to the commission of the crime, and therefore the fingerprints must have been impressed at the time of the crime. In Mikes, the court further stated:
Under our judicial system, the defendant has no duty to explain the presence of his fingerprints. Likewise, he is under no obligation to illuminate any inferences from the fingerprint evidence that are consistent with his innocence. To put it more directly, the defendant need not explain how or when his fingerprints were placed on the object in question; that burden lies elsewhere.
Id. at 359 (citation omitted).
I would adopt the standard in Mikes as the standard applicable to cases where fingerprint evidence is the only evidence of guilt. Further, I believe that clarification of the standard set forth in Carr is necessary, and would overrule that standard to the extent it places the burden of proof on the accused and is inconsistent with the standard in Mikes.
In applying the Mikes standard to the instant case, the record contains insufficient evidence that Geiger's fingerprint was impressed at the time of the crime and not at some earlier date. The fingerprint was found on a screen located on the outside of Ellis' house and the date of its impression was not determined. The record contains no evidence of whether the fingerprint was located on the inside or outside of the screen, whether the screen had been accessible to the public at some time before the crime occurred, whether the screen had been recently purchased, or whether the screen had been recently washed. Further, the state presented no evidence that the window screen was unavailable to Geiger before the crime occurred.
Moreover, there was no evidence placing Geiger at the scene of the crime and Geiger's fingerprints were not found anywhere inside the house. Geiger's fingerprints were also not found on any items which appeared to be touched by the burglar such as the purse and wallets, the window, or the lock box removed from the house. The only evidence presented by the state which linked Geiger to the crime was testimony by one expert witness that a fingerprint obtained from the outside screen of a window matched Geiger's fingerprint and testimony by the victim that she did not know Geiger and that he had never been to her home for any purpose. The state presented no hard evidence placing Geiger inside the house.
In a similar case, the District of Columbia Circuit reversed a defendant's conviction when the defendant's fingerprints were found on jars located within the victim's home and from which valuable coins had been stolen, and the prosecution introduced evidence which placed the defendant within a mile and a half of the victim's home at the approximate time of the crime. Borum v. United States, 380 F.2d 595 (D.C.Cir.1967). The court concluded that the prosecution presented no evidence that the jars were inaccessible to the defendant prior to the date of the crime and that the defendant had touched the jars during the commission of the crime. Id. at 596. The court eloquently stated, "to allow this conviction to stand would be to hold that anyone who touches anything which is found later at the scene of a crime may be *998 convicted, provided he was within a mile and a half of the scene when the crime may have been committed." Id. at 597. The instant case is even more troubling. Whereas Borum contemplates reversing a conviction if fingerprints are found and the state places the defendant in the area of the crime when the crime was committed, the state in this case presented no evidence placing Geiger anywhere near the scene of the crime.
Under the federal standard, the state clearly did not meet its burden of proving that Geiger touched the screen during the commission of the crime and not at some prior date. Accordingly, because the record contains insufficient evidence of guilt, I would reverse Geiger's conviction.
Regarding the district court clerk's inadvertent reference in the presence of the jury to Geiger's prior conviction, I conclude that the district court's denial of Geiger's motion for a mistrial constituted a clear showing of abuse of discretion and should be reversed.
Although I agree that the factors in Allen v. State, 99 Nev. 485, 665 P.2d 238 (1983), are applicable to the instant case, I believe that the majority has misweighed these factors. Specifically, the district court clerk's reference to Geiger's prior conviction in the presence of the jury was clearly and enduringly prejudicial. Although it is unclear from the record whether the clerk stated, "after having been previously convicted of ..." or "after having been previously convicted of Burglary in 1989," to be fair to Geiger, I must assume that the clerk stated the word "burglary." Because Geiger was being tried for the crime of burglary, the reference to Geiger's prior burglary conviction was clearly prejudicial. Moreover, although the district court admonished the jury to disregard the language about the previous conviction, such admonition may have brought greater attention to the prior conviction.
Further, the evidence of guilt in this case was far from convincing. As I have concluded, the evidence was insufficient to support the jury's verdict. Considering the scant evidence presented by the state, I cannot conclude beyond a reasonable doubt that the reference to Geiger's prior conviction did not affect the jury's verdict. See Courtney v. State, 104 Nev. 267, 756 P.2d 1182 (1988). The inadvertent reference was so prejudicial to Geiger that it could not be neutralized by an admonition to the jury. Therefore, a mistrial was warranted and the district court abused its discretion in denying Geiger's motion for a mistrial.
For the reasons stated, I respectfully dissent.
NOTES
[1] The record is unclear as to when the district court clerk stopped reading the information, because the court reporter did not transcribe the exact words read by the district court clerk. In their appellate briefs, the parties dispute whether the district court clerk read "after having been previously convicted of Burglary in 1989," or "after having been previously convicted of...."
[2] Although Geiger is represented by counsel in this appeal, he submitted a supplemental opening brief in proper person contending that there was insufficient evidence to support the jury verdict.
[3] NRS 207.010(5) applies to habitual criminals and provided, in relevant part, at the time of Geiger's conviction in 1992:

If a count under this section is included in an information charging the primary offense, each previous conviction must be alleged in the accusatory pleading, but no such conviction may be alluded to on trial of the primary offense, nor may any allegation of the conviction be read in the presence of a jury trying the offense or a grand jury considering an indictment for the offense.
[4] Although this court has not granted appellant permission to proceed in proper person, we have received and considered appellant's proper person documents. See NRAP 46(b). We deny appellant's motion to grant the appeal for failure of the state to respond to appellant's supplemental opening brief. We further deny appellant's motion to submit as moot.